```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                03-CR-08(01)(JMR/FLN)
                   07-CV-1207(JMR)
```

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| Peter George Noe | ) | |

Petitioner, Peter George Noe, seeks to vacate his conviction pursuant to 28 U.S.C. § 2255.  His petition is denied.

I. Background

Petitioner was charged in a two-count indictment with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846, and 851; and conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(B), 846, and 851. The indictment charged petitioner and four co-defendants with conspiracy to sell large amounts of high-purity methamphetamine, known as "glass," and hundreds of pounds of marijuana in the Austin, Minnesota area.  Petitioner and co-defendant, Timothy James Schultz, controlled the conspiracy using sadistic violence. Petitioner regularly taunted law enforcement, and was tape recorded bragging that police - even federal authorities - were afraid of him, because he was too smart to be brought to justice.

Rick E. Mattox, an experienced attorney and member of the District's Community Defender panel, was appointed to represent petitioner.  Mr. Mattox investigated the charges against petitioner, and notwithstanding his representation, petitioner

opted to retain private counsel, Albert Garcia, Jr., prior to trial.[1]  Co-defendant Timothy Schultz also substituted a private attorney, Bobby Sea, prior to trial.[2]  At one time prior to their representation here, Messrs. Garcia and Sea practiced law together. However, their association ended prior to the commencement of this case.

There is a contested question as to who paid petitioner's private attorney.  Mr. Garcia has consistently maintained that petitioner's family and friends paid his fees, but petitioner claims Schultz's relatives paid most of Mr. Garcia's fees. According to petitioner, among the payors was Andrea Schultz, Timothy Schultz's sister, who also happened to be petitioner's girlfriend at the time.  The Court notes, notwithstanding petitioner's claims that Schultz's family paid his attorney's fees, there is no supporting evidence showing that they did.

As part of his § 2255 petition, petitioner submitted an affidavit written by Schultz's mother, Melanie Grizzle, stating she paid Mr. Garcia $5,000 to represent Schultz; two affidavits written by petitioner's mother, Natasha Caron, stating she paid Mr. Garcia

---

[1] Petitioner is represented by Mr. Mattox in this § 2255 motion. His brief refers to investigation done by Mr. Mattox during his initial appointment.  The record, however, contains no evidence of the investigation, or whether the results of the investigation were given to Mr. Garcia.

[2] Although five individuals were named in the indictment, only petitioner and co-defendant Schultz elected to take their case to trial.  The remaining defendants pleaded guilty.

2

$5,000 to defend petitioner; and an affidavit written by Andrea Schultz stating that Mr. Garcia contacted her to pay for petitioner's representation by signing her home over to Mr. Garcia. These affidavits in no way suggest Mr. Garcia was paid by Schultz's family members to represent petitioner.

The fee-payment issue is further clouded by petitioner's recorded jailhouse telephone calls made between the time of indictment and trial. In one call, petitioner claimed he paid Mr. Garcia $60,000 to represent him and Schultz. He further stated that Mr. Garcia was "hiring his homeboy to come in and take over Timmy [Schultz]'s case." Government's Motion for Inquiry and Waiver of Potential Conflict of Interest. This call led the government to file a motion asking the Court to inquire into a potential conflict of interest. The government noted Mr. Garcia disputed petitioner's taped comments regarding payment of his fees. According to Mr. Garcia, Mr. Sea was paid by Schultz's family members.

Trial began on June 2, 2003. The Court heard the government's motion regarding counsel's potential conflict of interest prior to jury selection. The Court did not make a determination as to which parties paid either attorney. Rather, the Court discussed with each defendant in detail their right to independent counsel. Petitioner assured the Court he was comfortable in his relationship with Mr. Garcia; that he believed he was being independently

represented; and that he wished to continue to trial with Mr. Garcia.  He further assured the Court that he waived any conflict of interest.  (Trial Tr. vol. 1, 8-13, June 2, 2003.)

On June 9, 2003, a jury convicted petitioner on both counts.  At the October 30, 2003, sentencing hearing, petitioner produced a letter ostensibly written by trial witness Joe Robinson stating he would testify to whatever petitioner wanted him to say.  Notwithstanding this suspicious recantation of sworn testimony, the Court proceeded to sentence petitioner to 480 months imprisonment, followed by 10 years supervised release.[3]  Petitioner lodged a direct appeal, and, on July 21, 2005, the Eighth Circuit Court of Appeals affirmed his conviction and sentence.  United States v. Noe, 411 F.3d 878 (8th Cir. 2005).

Petitioner now claims ineffective assistance of counsel by stating the Court failed to conduct an appropriate inquiry into the issue of joint representation by the attorneys.  As a result, petitioner first claims his waiver of any conflict of interest was neither knowingly nor intelligently made.  Secondly, he avers that his attorney had both an actual and a potential conflict of interest, which adversely affected his performance.

Thirdly, petitioner claims actual innocence, offering a second

---

[3]The Court found that, even if the drug quantity for which Mr. Robinson claimed responsibility was deducted from petitioner's total drug quantity for purposes of relevant conduct, petitioner's guideline range would not have changed.  (Sentencing Tr. 6, Oct. 30, 2003.)

4

unsworn letter dated November 12, 2003, again purportedly written by Joe Robinson. In this letter, Robinson, contrary to his sworn trial testimony, states petitioner was innocent of all charges, and he, Robinson, was responsible for all the methamphetamine and marijuana in the conspiracy imported to and sold in Minnesota. The petition fails on all counts.

II. Analysis

    A. Alleged Conflict of Interest

Petitioner claims the Court failed to conduct a sufficient inquiry into a conflict of interest regarding counsel's representation. As a result, he denies his waiver of any conflict of interest was knowingly and intelligently made.

A defendant has the right to counsel of his own choosing. Powell v. Alabama, 287 U.S. 45, 53 (1932). Accordingly, even if a conflict exists, a defendant "may waive his right to the assistance of an attorney unhindered by a conflict of interests," so long as the waiver is knowing and intelligent. United States v. Brekke, 152 F.3d 1042, 1045 (8th Cir. 1998) (quoting Holloway v. Arkansas, 435 U.S. 475, 483 n.5 (1978)). If a case involves joint representation, the "district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest." United States v. Lawriw, 568 F.2d 98, 104 (8th Cir. 1977).

The Court is well aware of the legal requirements, under Rule

44 of the Federal Rules of Criminal Procedure, concerning inquiries into joint representation. These requirements, however, do not apply here, because there was no joint representation. At the trial, petitioner was represented by Mr. Garcia, and Schultz was represented by Mr. Sea. Although counsel had been associated previously, at the time of this case, the two attorneys were neither associated, nor did they engage in any joint representation of their individual clients. Both attorneys and their clients signed a document entitled "Joint Defense Agreement," but this was simply a document allowing the attorneys to discuss the case between themselves, while simultaneously maintaining attorney-client confidentiality. Thus, contrary to petitioner's assertion, he was not represented by Schultz's attorney, nor any attorney associated in practice with Mr. Sea.

Under these circumstances, there was no requirement that the Court conduct a detailed inquiry into the parties' representation. Regardless, the Court responded to the government's motion by inquiring into, and apprising defendants of, their right to counsel. (Trial Tr. 8-13.) When the Court asked petitioner if his attorney had explained that his obligation was to him alone, petitioner replied, "Yes, your Honor." Id. at 11. Petitioner also answered in the affirmative when questioned as to whether he was comfortable in his relationship with his attorney. Id. at 12. The Court pressed the matter, explaining the nature of any possible

conflict that could arise, and asking whether petitioner had these things in mind when he signed the waiver, to which he answered "Yes." Id. at 12-13. Based on petitioner's direct and unwaivering answers to these questions, the Court concluded petitioner's waiver concerning any agreement made between himself, his counsel, and his co-defendant was knowing and intelligent. The Court maintains this view at the present time, and concludes petitioner was represented by counsel of his choice; that there was no conflict or joint representation; that if there was a conflict or question of joint representation, it was knowingly and intelligently waived; and if there was any error, it was suborned at petitioner's knowing behest, and waived as invited error.

Based on the fact that petitioner's counsel did not represent Schultz, and that the Court did inquire as to the agreement concerning privilege entered into by the parties and their attorneys, the Court finds its inquiry into the alleged conflict of interest to be sufficient.

B.   Ineffective Assistance of Counsel

Petitioner also claims ineffective assistance of counsel, arguing his attorney had both an actual conflict of interest, as well as a potential conflict of interest, which adversely affected his performance. He also claims his attorney was ineffective for failing to investigate his case. Each claim fails.

Claims of ineffective assistance of counsel are analyzed under

the two-part test announced in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In order to prevail, a petitioner must show: first, "that counsel's representation fell below an objective standard of reasonableness," <u>id.</u> at 688; and second, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. Petitioner has entirely failed to show ineffective representation.

Petitioner claims his trial attorney had a conflict of interest for allegedly having received most of his fees from Schultz's relatives. However, even assuming such a fact establishes a conflict of interest - and the Court does not so assume – petitioner knowingly and intelligently waived such a claim by signing a the waiver of conflict of interest.

As previously discussed, petitioner told the Court he understood there can be a conflict when third parties pay for a defendant's representation. (Trial Tr. at 12.) The Court did not resolve the question, no resolution was necessary. This is because petitioner told the Court he understood the nature of a possible conflict, and had these things in mind when he signed the waiver of conflict of interest. <u>Id.</u> at 12-13. "[W]here a possible conflict of interest is pointed out to an accused and the accused then makes an intelligent and intentional waiver, he cannot later complain." <u>Larry Buffalo Chief v. South Dakota</u>, 425 F.2d 271, 280 (8th Cir. 1970). Given petitioner's waiver of any

conflict of interest, and his failure to show the waiver was not knowingly and intelligently made, he may not now assert such a claim.

Even if petitioner had not waived his claim, he would need to establish an actual conflict to show his right to counsel was impaired. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). To establish a constitutional violation, the mere potential for a conflict of interest is not enough. Id. at 350. Petitioner has not shown that the alleged conflict adversely affected his lawyer's performance in any way.

Petitioner claims his attorney should have advanced a different defense theory; namely, that Schultz was solely responsible for the sale of methamphetamine. He claims Mr. Garcia did not do so out of loyalty to Schultz, since Schultz's friends and family paid Garcia's attorney's fees. He also claims his attorney failed to investigate his case, further evidencing his divided loyalties. Each of claim is unavailing.

An attorney's strategic trial decisions are not ineffective simply because they were ultimately unsuccessful. James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996). Additionally, the Supreme Court

has held that reasonable trial strategy cannot rise to the level of ineffective assistance of counsel. Strickland, 466 U.S. at 689.

It is true petitioner's attorney opted against trying the case on the theory that petitioner was not involved in the drug conspiracy, and that responsibility for the drug operation lay entirely with Schultz. From an objective standpoint, the Court finds such a defense strategy would have been risky to petitioner indeed. "[P]oint[ing] the finger" at Schultz, as petitioner suggests, Petr.'s Mem. [Doc. No. 271] 11, would have required petitioner's attorney to tell the jury that the government's witnesses were telling the truth about Schultz, but lying about petitioner. Rather than opting for such a self-defeating strategy, his counsel "made the strategy decision with his client" to "pursue [ ] an aggressive strategy of attacking and impeaching the government witnesses." (Garcia Aff. ¶ 9.)

This strategy was entirely reasonable, and in no way suggests counsel sacrificed petitioner's interest for the sake of his co-defendant. See Strickland, 466 U.S. at 689. Even though the strategy was ultimately unsuccessful, the Court finds it was reasonable. As a result, it does not rise to the level of ineffective assistance of counsel. James, 100 F.3d at 590. Thus, petitioner's argument that his attorney should have pursued a "point the finger" strategy fails.

Petitioner also advances another rejected defense stratagem.

This time, he says his attorney should have relied on a "split conspiracy" defense.  Here, petitioner would admit being a member of a marijuana conspiracy, but deny participating in the methamphetamine conspiracy.  Petitioner claims, with no admissible proof, that an investigator working for Mr. Mattox "uncovered substantial evidence" in support of this claim.  Petr.'s Mem. 13.  There are several problems with this split-conspiracy claim.

First, petitioner fails to give the Court any proof of the "substantial evidence" the investigator found showing Schultz was solely responsible for the methamphetamine sales.  Second, petitioner's argument does nothing to question the government's trial evidence implicating petitioner, including petitioner's own recorded jailhouse telephone calls in which he ordered new supplies of methamphetamine to be delivered to a co-conspirator. Petitioner was certainly aware of the jail's practice of monitoring and recording phone calls as this is disclosed to inmates and posted at the jail.  To evade monitoring, petitioner used terms such as "QP" or "cutie pie" to refer to quarter pounds of methamphetamine. Petitioner does not explain how counsel could have presented a "split conspiracy" defense and also dealt with these recordings. He does, however, argue that "QP" referred to a quarter pound of marijuana -- not methamphetamine.  This fact notwithstanding, this would still be a troublesome defense.  In any event, it cannot be seriously argued that "but for counsel's unprofessional errors [in

not offering this defense], the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Since the decision against pursuing a "split conspiracy" defense was a reasonable trial strategy, petitioner has entirely failed to show ineffective assistance of counsel.

Finally, petitioner now claims his trial attorney was ineffective for failing to properly investigate his defense. He does not claim his attorney failed to conduct his own investigation; he simply argues Mr. Garcia was ineffective because he failed to obtain information from the investigator retained by Mr. Mattox. As discussed above, petitioner does not identify what that information was, nor does he show how it would have exculpated him from his involvement in the conspiracy. The trial record is replete with evidence establishing petitioner's guilt. There is no evidence on the record, however, to establish that Mr. Garcia failed to investigate petitioner's case, or that had he obtained the investigation materials, that information would have had any effect on Mr. Garcia's trial strategy or the outcome of the case. The Court finds petitioner has made no credible showing of unreasonable representation.

For these reasons, the Court finds petitioner was ably represented by counsel.

Even had petitioner's attorney performed unreasonably, petitioner is unable to show prejudice. His newly-claimed defense

theories are unsupported by the record. He has failed to show that, had his alternative theories been presented to the jury, they would likely have resulted in acquittal. Because an ineffective assistance of counsel claim cannot be based on a failure to raise losing arguments, petitioner's claim fails. See <u>Clemons v. Armontrout</u>, 921 F.2d 187, 191 (8th Cir. 1990).

For all of these reasons, the Court finds petitioner suffered no prejudice from his attorney's representation, and rejects each claim of ineffective representation.

C. <u>Actual Innocence</u>

Petitioner claims Joe Robinson's recantation of his testimony establishes his innocence, warranting relief. He relies on an unsworn letter, purportedly written by Robinson, which contradicts Robinson's sworn trial testimony, and states petitioner is innocent of all charges. The Court is not at all convinced that Robinson's letter establishes petitioner's actual innocence for several reasons.

First, the Court has no hesitation in stating it views Mr. Robinson's recantation with great skepticism. At the very least, in light of his previous sworn testimony, it appears Mr. Robinson's recall is facile at best. His most recent letter is not a sworn affidavit. But even if it had been in the form of an iron-clad affidavit, trial recantations are viewed with suspicion. <u>Wadlington v. United States</u>, 428 F.3d 779, 784 (8th Cir. 2005).

The Court recalls the sentencing hearing. In the face of Mr. Robinson's first unsworn letter, the prosecutor pointed out that Mr. Robinson was not the only witness who testified against petitioner. The testimony of other witnesses was fully sufficient to establish petitioner's guilt beyond a reasonable doubt. Beyond this, Mr. Robinson's second letter cannot be considered new evidence. This letter is dated thirteen days after petitioner's sentencing. Yet, this document was never previously offered to the Court or to the Eighth Circuit for consideration.

Finally, as noted by the Court at the sentencing hearing, even if Robinson's testimony concerning drug quantity was entirely discounted, petitioner's sentencing guideline range would remain the same. (Sent. Tr., at 6.) The Court finds Robinson's letter offers no reason to revisit petitioner's conviction or sentence.

III.  Certificate of Appealability

The Court has also considered whether it is appropriate to issue a Certificate of Appealability ("COA"). See Tiedeman v. Benson, 122 F.3d 518 (8th Cir. 1997). The Court concludes that no issue raised, save one, is "debatable among reasonable jurists." Flieger v. Delo, 16 F.3d 878, 883 (8th Cir. 1994) (citing Lozada v. Deeds, 498 U.S. 430, 432 (1991)).

The Court grants a Certificate of Appealability on the question of petitioner's dual representation and conflict of interest claim. The Court, as set forth herein, finds petitioner

has failed to present a colorable claim for habeas corpus relief under § 2255, but as representation goes to the core of a person's constitutional rights, this question is deserving of a Certificate. As to this question, petitioner has made the requisite "showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

IV. <u>Conclusion</u>

Accordingly, based on the files, records, and proceedings herein, IT IS ORDERED that:

1.  Petitioner's motion for relief pursuant to § 2255 [Docket No. 270] is denied.

2.  A Certificate of Appealability will issue on petitioner's dual representation and conflict of interest claim.

3.   In all other respects, the Court declines to issue a Certificate of Appealability.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  December 20th, 2007

                                                <u>  s/ James M. Rosenbaum  </u>
                                                JAMES M. ROSENBAUM
                                                United States Chief District Judge